IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Criminal Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 08-110-04 (TH) |
| ) | |
| ) | |
| JONATHAN WRIGHT | |
| _____ | |

**MOTION FOR MODIFICATION OF**
**PRE-TRIAL DETENTION ORDER**

Defendant Jonathan Wright, through undersigned counsel, respectfully moves this Court to revoke the order of detention of June 24, 2008, and to release him under the conditions set forth below, and any other conditions this Court may deem appropriate.

In support thereof, the defendant states the following:

**I. Background**

On May 15, 2008, Mr. Wright was arrested in Ft. Lauderdale, Florida, on the warrant issued in this matter and then removed to this jurisdiction. He was presented in this courthouse for the first time on June 18, 2008. A detention hearing was thereafter held on June 24, 2008. As a grand jury had by then indicted Mr. Wright on one count of Conspiracy to Distribute and Possess With Intent to Distribute Five Kilograms or More of Cocaine, 21 U.S.C. §§846, 841(a)(1), (b)(1)(A)(ii), the parties proceeded at the hearing by proffer.

The Government proffered that Mr. Wright was involved in a conspiracy to bring between ten and twenty kilograms of cocaine into the District of Columbia from the Bahamas for distribution; that in furtherance of that conspiracy Mr. Wright drove from Florida to the District of Columbia to

obtain $175,000 from co-defendant Lonnell Glover; that Mr. Wright transported that money back to Florida to purchase the cocaine from his supplier in the Bahamas; that Mr. Wright then traveled by airplane from Florida to the Bahamas in order to purchase the cocaine. While $175,000 was in fact thereafter seized from an individual by the name of Cardinal Marshall, who had boarded a flight bound from Miami International Airport to the Bahamas, no cocaine was ever seen or recovered.

The one-Count indictment is spare, alleging a conspiracy generally but without so much as a single overt act. Based on that minimal Indictment and the Government's proffer at the detention hearing, this Court issued a Detention Memorandum ("Memorandum") characterizing the weight of the Government's evidence as "overwhelming". Specifically, the Memorandum observes that the Government possessed recorded conversations between Mr. Wright and his coconspirators, surveillance of Mr. Wright in Maryland at a co-conspirator's house, surveillance of Mr. Wright in Florida purchasing the microwave used to attempt transport of the $175,000 to the Bahamas, and recorded conversations of Mr. Wright while in the Bahamas, trying to locate another co-conspirator. The Memorandum observes moreover that "there is no evidence" that this was a one shot transaction, but instead a "scheme to bring a substantial amount of cocaine into the District of Columbia area over an extended period of time". Finally, the Memorandum notes that the "defendant has demonstrated that he has access to large amounts of cash".

## II. Discussion

Although a number of intercepted conversations involving Mr. Wright and his two co-defendants – lead defendant Lonnell Glover and Robert Robbins – were in fact intercepted between approximately May 1 and June 17, 2007, a review of every single one those conversations reveals clearly that Mr. Wright had just been introduced to Mr. Glover by Mr. Robbins shortly before the wiretap went up, not an ongoing relationship between them. And aside from the clear absence of

history between Mr. Glover and Mr. Wright, no intercepted conversation contemplates a future-oriented business relationship.

That said, it would be disingenuous to assert here that these intercepted conversations do not reveal that co-defendants Wright, Glover and Robbins were focused on the completion of some sort of immediate business undertaking, apparently business that involves sending money from Florida to the Bahamas. Yet, there is no 'smoking gun' in the intercepted conversations, and certainly nothing in Mr. Wright's history whatsoever, that convincingly supports the claim that a campaign was afoot to import cocaine from the Bahamas to the United States. It would appear to be Mr. Glover's alleged involvement in a separately alleged conspiracy involving heroin and phencyclidine (Criminal No. 07-153 ((TFH)) that gives the Government the 'context' from which it argues that Glover, Robbins and Wright were separately conspiring to complete a drug deal involving cocaine.

Assuming, *arguendo*, that co-defendant Glover was in fact separately involved in trafficking in heroin and phencyclidine, the conversations intercepted in this case between he and Mr. Wright just as readily support a claim that Mr. Glover is seeking to either launder money and/or circumvent reporting requirements for money transfers between Florida and the Bahamas. To be sure, such conduct constitutes federal crime, but of a much different character in the context of conditions of release than does the allegation of a conspiracy to traffic in cocaine.

It warrants noting that the individual arrested at the Miami International Airport while trying to transport the $175,000 at the center of the conspiracy alleged here knew nothing – and, it is reasonable to conclude, detected nothing – that suggested to him that the money was intended to facilitate a drug-trafficking offense. Not only did Mr. Marshall say as much at the time of his arrest, his subsequent plea in the United States District Court for the Southern District of Florida was to the crime of concealing more than $10,000 while attempting to transport it from the United States to

another country.

Separately, a review of the discovery material provided now completed, it is particularly noteworthy that at Mr. Wright's detention hearing the Government overstated the strength of its evidence. The Government's claim at the hearing that it had in-store, video surveillance depicting Mr. Wright purchasing the microwave that was later intercepted while bound for the Bahamas and in which the $175,000 was discovered, is simply not true. No such video exists. As to the Government's separate assertion that Mr. Wright demonstrated that he had access to large amounts of cash, the intercepted conversations between Mr. Wright and Mr. Glover instead clearly show that while Mr. Glover certainly had money, Mr. Wright did not. For example, several of the intercepted conversations early in the six-week period during which their conversations occurred reveal Mr. Wright asking Mr. Glover to help him with a loan of $1,500 so that Wright can cover his mortgage payment.

## III. Addressing the Section 3142(g) Factors [1]

### I. The Nature and Circumstances of the Charged Offense and the Weight of the Evidence

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any person and the community, the first two considerations set forth at 18 U.S.C. §3142(g) for the Court to consider are 1) the nature and circumstances of the offense charged, and 2) the weight of the evidence.

Mindful of all of the above – with emphasis on the fact that Mr. Wright has no history involving trafficking in controlled substances – the alleged conspiracy against Mr. Wright would appear to be based in large part – if not almost entirely – on the Government's interpretation of the above-noted

---

[1] Although he was then in no position to rebut the Government's factual proffer, Mr. Wright proffered these same 18 U.S.C. §3142 arguments at his detention hearing.

series of intercepted telephone conversations between Glover, Robbins and Wright.

Given the above, given Mr. Wright's lack of criminal record, and given that the alleged leader of the conspiracy – again, Lonnell Glover – is incarcerated and his alleged conspiracy to distribute heroin and phencyclidine otherwise shut down, the Government's anticipated rejoinder that Mr. Wright's ongoing dangerousness is established by clear and convincing evidence would have only minimal traction.

**ii. The Defendant's History and Characteristics**

Focusing on the remaining considerations under §3142, Mr. Wright was born in Florida in 1975 and has lived there ever since. His mother has confirmed for undersigned counsel Mr. Wright's employment as a self-employed auto mechanic for the last twelve years. Again, he has no known criminal record.

**III. Conclusion**

Mr. Wright does not request that he be allowed to return to Florida pending the trial of this matter, nor would he want to given his need to consult with his counsel. His maternal aunt, Sonja Jones, a retired Army Sergeant, has offered to have Mr. Wright reside with her here in the D.C. area while this matter is pending. Ms. Jones is married, she has no criminal record, she has been at the same address in Maryland for at least ten (10) years, she is willing to make whatever adjustments are necessary to her phone to accommodate the PSA electronic home monitoring program, and she will otherwise agree to report any violations of release conditions that might be set for Mr. Wright. Finally, Mr. Wright's passport can be submitted as a condition of his release. It is respectfully submitted that this combination of conditions of release will reasonably assure the safety of the community and Mr. Wright's appearance in court as directed.

**WHEREFORE**, for the above stated reasons, the defendant respectfully moves this Court to

modify its order of detention and release him with conditions pending trial.

                                                          Respectfully submitted,

                                                //s//
JOSEPH BESHOURI
D.C. Bar No. 412199
419 - 7th Street, N.W., Suite 405
Washington, D.C.  20004
(202) 842-0420