UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL NO. 08-110-04 (TFH) |
| | : | |
| JONATHAN WRIGHT, | : | |
| Defendant. | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR MODIFICATION OF PRE-TRIAL DETENTION ORDER

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant's Motion for Modification of Pre-Trial Detention Order. The record shows that no condition nor combination of conditions for the defendant's release can reasonably assure the safety of the community. Thus, the United States asks the Court to continue to hold the defendant without bail pending trial. In support the United States says as follows:

Background

In the course of an investigation into a conspiracy to distribute heroin and phencyclidine (PCP) in the District of Columbia involving Lonnell Glover and 26 co-conspirators, the government obtained authority from the Honorable Rosemary M. Collyer of this court to monitor conversations over Glover's cellular telephone and in and around his pick up truck. Those conversations disclosed that it was Glover's intention to arrange for his west coast PCP supplier to manufacture the drug in the vicinity of the District of Columbia. Glover intended to select the site and provide the necessary

precursor chemicals to accomplish this. Intercepted conversations indicate that Glover intended to dedicate $300,000 to this plan. When this plan could not be realized because of the west coast supplier's reluctance, Glover shifted his attention to a plan to invest in the distribution of cocaine.

To this end, Glover contacted an old acquaintance and drug dealer, Robert Robbins, who was residing in Alabama. Robbins introduced Glover to the defendant because Wright had a cocaine connection in the Bahamas, an individual named "Foot" or "Big Foot," who would be willing to sell large quantities of cocaine. Defendant recruited a courier who would carry to the Bahamas the money necessary to fund the cocaine purchase. Over the course of the development of this plan there were numerous telephone calls and several face-to-face meetings involving defendant.

In May of 2007, defendant traveled from Florida in a rented van to the District of Maryland where he met with Glover at his home at 4908 Brentley Road in Temple Hills, Maryland. Defendant and Glover then traveled to a hardware store where they obtained the supplies necessary to construct a place in defendant's vehicle to secrete the funds to support their cocaine scheme, $175,000 in cash. Defendant then traveled the following day with the money in the rented van to his home in Florida. Shortly thereafter Glover flew to Florida to meet with defendant. In addition, Glover arranged for another co-conspirator to rent a passenger van in the DC area and drive it to Florida to transport the cocaine back to the District of Columbia area. While in Florida, Glover and defendant met with the courier and purchased a microwave oven. Defendant then secreted the $175,000 in the innards of the microwave. The courier recruited by defendant agreed to transport the microwave to the Bahamas via commercial aircraft for $3,000, while Glover and Wright were to board another flight

to the Bahamas. Unbeknownst to the co-conspirators at the time Glover and defendant departed for the Bahamas, the courier had earlier been the subject of a Customs search and the $175,000 hidden in the microwave had been seized and the courier was arrested. When Glover returned to the United States there were numerous intercepted conversations with defendant and other co-conspirators in which he discussed the ill-fated attempt to import cocaine.

On June 12, 2007, a federal grand jury indicted the Glover and twenty-four other individuals, in two indictments, for distributing PCP and heroin supplied to them by Glover, Velma Williams and Suggs. Subsequently, on April 17, 2008, defendant, Lonnell Glover, Cornell Glover and Robert Robbins were indicted in the instant matter. Pursuant to Rule 9 of the Federal Rules of Criminal Procedure, bench warrants were issued for the arrest of each of the defendants named in this Indictment, save Messrs. Lonnell and Cornell Glover, who were already in custody having been indicted in the heroin and PCP conspiracy. Defendant was arrested in Florida on May 15, 2008, and removed to the District of Columbia to answer to the Indictment in this matter. On June 18, 2008, defendant was arraigned and on June 24, 2008, Magistrate Judge Facciola held a hearing on the government's motion to detain defendant without bond pending trial in this matter. Magistrate Judge Facciola ordered defendant held without bond and filed a Memorandum Opinion setting out his reasons for that decision.

## Argument

This Court should uphold Magistrate Judge Facciola's decision to hold the defendant without bond pending trial in this matter. It is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.***

*See* S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[1]

---

[1] The Court must always consider whether defendant's release is a danger to the community. This point is made throughout the Bail Reform Act. Section 3142(e), which authorizes detention without bail pending trial, which reads:
> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, such judicial officer ***shall order*** the detention of the person before trial.

Emphasis added. Similarly, § 3142(f) reads:
> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person ***and the safety of any other person and the community*** –
>> (1) upon motion of the attorney for the Government, in a case that involves,
>>> (C) an offense for which a maximum term of imprisonment
>> of ten years or more is prescribed in the Controlled Substances Act
>> (21 United States Code, § 801 *et seq.*) . . .

Emphasis added. This point is again made in § 3142(g), **Factors to be considered**, which states:
> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, take into account the available information concerning –
>> (1) The nature and circumstances of the offense charged, including whether
> the offense is a crime of violence or involves a narcotic drug;
>> (2) the weight of the evidence against the person;
>> (3) the history and characteristics of the person . . .

There are no conditions of release that will ensure that defendant will not pose a danger to the community if released. This is based first upon the presumption to that effect written into the Bail Reform Act. 18 United States Code, § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions of release will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."). This presumption, triggered by indictment, is overwhelmingly reinforced by the facts of this case.

The defendant is in the drug trade, and he is not a minor player. He suggests that his activities in this matter reflect that this was a single incident and did not reflect an ongoing relationship between defendant and Glover. To the contrary, the very nature of the scheme reflects that this was indeed a "future oriented business relationship" despite defendant's assertion to the contrary. The plan developed over almost two months. Defendant provided Glover with the cocaine dealer in the Bahamas, with a courier, and even transported the money for the drug deal from Maryland to Florida. Glover told one of his co-conspirators that he planned to make 80 million dollars by the end of the year from cocaine sales through defendant. In another conversation between Glover and defendant, Glover said he could sell 1,000 kilograms of cocaine a moth, including 400 to 500 kilograms of cocaine in the Dc area alone. Defendant told Glover that his cocaine suppliers do not like selling small amounts. Further, Wright was clearly an active participant in this scheme

---

(4) ***the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .***
(Emphasis added.)

and knew that the funds involved were intended for drug purchase which explains why he traveled to this area in May, constructed a hiding place in his vehicle and traveled back to Florida with the funds. Further, Wright was aware of the presence of and the need for the "courier" who was to travel back to this area with the drugs. There would be no need for such a courier in a "money laundering scheme. Finally, that this was indeed a "future oriented business relationship" is demonstrated by the quantity of drugs involved. The $175,000 seized in this matter suggests that at conservative estimate a minimum of 15 kilograms of cocaine were involved in this deal. Not a typical quantity for international smuggling among conspirators with an ongoing relationship but rather an amount that suggests that buyer was testing the supplier's ability to produce substantial quantities of a quality product and the supplier is testing the ability of the buyer to produce the funds and promptly distribute the product. This suggests an intention to establish an ongoing relationship, an intention supported by Glover's intercepted conversations.

In his Motion for Modification defendant also insinuates that the Indictment herein is "sparse," in that it alleges the conspiracy "without so much as a single overt act." *See United States v. Lam Kwong Wah,* 924 F.2d 298, 302-303 (D.C. Cir. 1991); *United States v. Pumphrey*, 831 F.2d 307, 308-309, 265 U.S. App. D.C. 306, 307-308 (D.C. Cir. 1987). These cases hold that the offense of violating 21 U.S.C. § 846, by conspiring to violate federal narcotics laws, does not include an element of commission of an overt act in furtherance of the conspiracy. Although defendant later references having listened to "Every single one of those conversations," he does not disclose that from the day of his arraignment defendant has had a copy of all of the more that 1800 hours of intercepted conversation in this case, the pleadings in support of the government's requests for authority to monitor and a "filter" computer disc containing only those conversations involving

defendant. We are confident that in light of the information thus far supplied, defendant would have little hope of succeeding in a request for a Bill of Particulars.

These facts embody the danger that defendant's release poses. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, supra, at 3195-3196.

The defendant may argue that his community ties here or in Florida, overcome the presumption that he should be held pending trial. Again, the framers of the 1984 Bail Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, *supra*, 3207. Nor is it clear why community ties, which clearly were not enough to keep the defendant from breaking the law previously, will suddenly keep him on the straight and narrow. In summary, if the defendant were released, it would constitute a clear danger to the community.

**WHEREFORE**, the United States respectfully requests that the Order of the Magistrate Judge denying defendant release be affirmed and the defendant ordered held without bond pending trial.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____
ANTHONY SCARPELLI
Assistant United States Attorney

_____
WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney

_____
JOHN K. HAN
Assistant United States Attorney

*Certificate of Service*

**I HEREBY** certify that I have caused a copy of the foregoing government's response to defendant Wright's Motion for Modification of Pre-Trial Detention Order and proposed Order to be served by ECF filing upon all counsel listed below;  this 15th day of October, 2008.

_____
WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney
D.C. Bar No. 166-991
555 Fourth Street, N.W.
Washington, D.C. 20001
(202) 305-1749